UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VERONICA ORTIZ,

                         Plaintiff,          **1:15-cv-00826-MAT**

                                                **DECISION AND ORDER**

        -vs-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

---

## I.    INTRODUCTION

Represented by counsel, Veronica Ortiz ("Plaintiff") has brought this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II.    PROCEDURAL BACKGROUND

On October 27, 2011, Plaintiff protectively filed a Title II application for DIB and a Title XVI application for SSI, alleging disability beginning December 31, 2010, due to a seizure disorder, lupus, high blood pressure, depression, and anxiety. Administrative Transcript ("T.") 88-97, 187. Plaintiff's

application was initially denied and she timely requested a hearing, which was held before administrative law judge ("ALJ") Stanley Moskal, Jr. on June 3, 2013. T. 98-119, 128-138. On February 26, 2014, the ALJ issued an unfavorable decision. T. 60-83. Plaintiff's request for review was denied by the Appeals Council on July 17, 2015, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2010. T. 62. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from December 31, 2010, the alleged onset date. *Id.*

The ALJ split the remainder of his decision into two separate analyses. First, at step two, the ALJ determined that, from the alleged onset date through September 6, 2011, Plaintiff had the medically determinable impairments of high blood pressure and a history of asthma. *Id*. The ALJ further found that, from the alleged onset date through September 6, 2011, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months and that she therefore did not have a severe

impairment or combination of impairments. *Id*. The ALJ thus concluded that, through her date last insured, Plaintiff had not been disabled as defined in the Act, and was not entitled to DIB. T. 67.

In his second analysis, the ALJ considered whether Plaintiff was entitled to SSI for the period from September 7, 2011 to the date of the ALJ's decision. At step two, the ALJ determined that, commencing September 7, 2011, Plaintiff had the severe impairments of complex partial epilepsy and systemic lupus erythematosus ("SLE"). T. 67. The ALJ further determined that Plaintiff had the non-severe impairments of high blood pressure, history of asthma, headaches, affective disorder, and generalized anxiety disorder. T. 67-71.

At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they did not meet or medically equal the severity of a listed impairment. T. 78. Prior to proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. 416.967(c), with the following additional limitations: can lift and carry up to 25 pounds frequently and 50 pounds occasionally; can stand and walk about six hours out of an eight-hour workday; can sit about six hours out of an eight-hour workday; can push and pull up to 25 pounds frequently and 50 pounds occasionally; can occasionally climb stairs and ramps, balance,

kneel, crouch, and crawl; can never climb ladders or scaffolds; has no visual or communicative limitations; should avoid working at unprotected heights or around hazards, extreme cold, extreme heat, wetness, humidity, fumes, gases, smoke, or other respiratory irritants. T. 79.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 82. At step five, the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to find that there are other jobs that exist in significant numbers in the national economy and state-wide that Plaintiff can perform. T. 82-83. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 83.

**IV. DISCUSSION**

**A. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409,

417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff contends that the Commissioner's determination is subject to reversal because (1) the ALJ failed to properly develop the record, (2) the Appeals Council erroneously found that new evidence submitted by Plaintiff was not material, and (3) the ALJ erred in finding that Plaintiff's affective disorder and generalized anxiety disorder were non-severe. For the reasons set forth below, the Court finds these arguments without merit.

**B.  Development of the Record**

Plaintiff's first argument is that the ALJ failed to properly develop the record in this matter. In particular, Plaintiff contends that because the last medical evidence of record was dated April 11, 2013 and the ALJ did not issue his decision until February 26, 2014, the ALJ had a *per se* duty to obtain more recent records. Plaintiff is incorrect.

The Commissioner's regulations require an ALJ to develop the record by obtaining a "complete medical history for at least the 12 months preceding the month in which [a claimant] file[s][an] application." 20 C.F.R. § 404.1512(b)(1). "Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of

disability as the Secretary may require." *Long v. Bowen*, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal citations omitted). Moreover, where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records. *See Martinez-Paulino v. Astrue*, 2012 WL 3564140, *14 (S.D.N.Y. Aug. 20, 2012) ("The record thus contained sufficient evidence to make a disability determination, and the ALJ was under no obligation to seek additional treatment records. Therefore, the ALJ properly satisfied his duty to develop the record."); *Valoy v. Barnhart*, 2004 WL 439424, *7 (S.D.N.Y. Mar.9, 2004) ("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample.").

With respect to post-hearing evidence, an ALJ may satisfy his duty by holding the record open and allowing a claimant or her representative to submit additional evidence. *See Melton v. Colvin*, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (collecting cases). In this case, the ALJ held the record open for 45 days after the hearing to permit Plaintiff's counsel to submit additional information, in accord with his duty to develop the record. T. 118-19. Plaintiff has failed to identify what additional steps she contends the ALJ was required to take, nor has she proffered any explanation for why the ALJ's holding open of the record is purportedly insufficient.

Moreover, and as discussed further below, the medical evidence that Plaintiff claims should have been obtained by the ALJ was subsequently submitted to the Appeals Council and therefore became a part of the administrative record. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) ("new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision . . . [submission of evidence to the Appeals Council] provide[s] claimants a final opportunity to submit additional evidence before the Secretary's decision becomes final"). Plaintiff has not identified other medical records that were purportedly missing, and so any error by the ALJ in this regard is moot, because the information in question was ultimately made a part of the record before this Court. As such, remand on this basis would not be appropriate.

### C. Appeals Council Consideration of New Evidence

Plaintiff's second argument is that the Appeals Council erred in finding that the new evidence Plaintiff submitted to it was not material. In particular, Plaintiff argues that the Appeals Council should have treated a letter dated November 14, 2013 from treating physician's assistant ("PA") Jill M. Galley as a new medical source statement from a treating physician. Again, the Court disagrees.

A claimant may submit new evidence to the Appeals Council following an adverse ALJ disability determination without any showing of good cause. 20 C.F.R. §§ 404.970(b), 416.1470(b). The

regulations provide that the Appeals Council "shall" consider "new" and "material" evidence that relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). A claimant must show that the proffered evidence is (1) "'new' and not merely cumulative of what is already in the record," and that it is (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)).

As a threshold matter, contrary to Plaintiff's argument, PA Galley's letter does not qualify as a medical source statement from a treating physician. A physician's assistant is not a recognized treating source under the applicable regulations. *See Zenzel v. Astrue,* 993 F. Supp. 2d 146, 154 (N.D.N.Y. 2012) ("This Court recognizes that the assessment of a physician's assistant is not entitled to any special weight under the applicable Social Security Regulations. . . . Physician's assistants are not included in [the] five categories of acceptable medical sources.") (internal quotation omitted).

Moreover, PA Galley's letter is extremely brief, stating without elaboration that Plaintiff "suffers from a severe seizure disorder that prevents her from seeking gainful employment and from driving a vehicle." T. 775. The Appeals Council did not err in finding that this conclusory opinion, offered without any supporting documentation or evidence, did not establish a reasonable probability that Plaintiff's application would have been decided differently had the ALJ seen it. This is particularly true because a medical source's opinion that a claimant is totally disabled "is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner." *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003); *see also Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (Appeals Council did not err in refusing to consider a conclusory one-page document stating that the plaintiff was disabled). As such, the Court finds no error in the Appeals Council's determination that PA Galley's letter did not constitute material evidence.

**D. Consideration of Mental Impairments**

Plaintiff's final argument is that the ALJ erred in concluding that her affective disorder and generalized anxiety disorder were non-severe impairments. This argument is without merit.

Under the Commissioner's regulations, an impairment is severe only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. "Basic work-related mental abilities include understanding,

carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, coworkers, and usual work situations; and dealing with changes in a routine setting." *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *7 (W.D.N.Y. Sept. 20, 2017). "A claimant has the burden of establishing that she has a severe impairment." *Id.* (internal quotation omitted).

"[T]he Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. These regulations require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citation omitted).

> This technique requires the reviewing authority to determine first whether the claimant has a medically determinable mental impairment. If the claimant is found to have such an impairment, the reviewing authority must rate the degree of functional limitation resulting from the impairment(s) in . . . four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe."

*Id.* at 265-66 (internal citations and quotations omitted).

In this case, the ALJ applied the special technique to Plaintiff's mental impairments and found as follows: (1) Plaintiff has the medically determinable impairments of affective disorder

-10-

and generalized anxiety disorder; (2) Plaintiff has no limitations in the area of activities of daily living, mild limitation in the area of social functioning, no limitation in the area of concentration, persistence, or pace, and has had no significant episodes of decompensation' (3) because Plaintiff's medically determinable mental impairments cause no more that mild limitation in any of the first three functional areas and because she has experienced no episodes of decompensation, they are non-severe. T. 71-76.

A careful review of the record demonstrates that the ALJ's conclusions regarding Plaintiff's mental impairments are well-supported. Consultative psychiatric examiner Dr. Susan Santarpia examined Plaintiff on January 17, 2012. T. 539-42. Dr. Santarpia observed that Plaintiff was able to dress, bathe, and groom herself, as well as engage in cooking, cleaning, laundry, and shopping. T. 540. Plaintiff was able to manage her own money, socialize with her family and friends, and act as primary caregiver for her two young children. *Id*. Plaintiff was also able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress, "all within normal limits." T. 540-41. Dr. Santarpia opined that Plaintiff's

psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis." T. 541.

Similarly, state agency psychiatrist Dr. K Echevarria reviewed Plaintiff's medical records and found that Plaintiff's mental impairments were not severe. T. 579-591. Consultative physician Dr. Gautam Arora performed a neurologic examination of Plaintiff and noted that she could cook, do laundry, shop, and perform child care, as well as showering and dressing herself. T. 544. Dr. Arora found on examination that Plaintiff had no indication of any memory impairment, that her mood and affect were appropriate, and that she had no impairment in her insight or judgment. *Id.* Additionally, records from Plaintiff's treating physician Dr. Michael Calabrese indicate that Plaintiff's anxiety and depression were well-controlled by her medication. T. 747.

Plaintiff has not pointed to any medical evidence of record to contradict the ALJ's finding that her mental impairments were non-severe. Instead, she relies on her own testimony regarding her limitations. However, the ALJ in this case properly found that Plaintiff was less than fully credible. In particular, the ALJ noted that Plaintiff had made numerous inconsistent statements regarding her educational and work histories, as well as certifying to the unemployment insurance office that she was ready, willing, and able to work during a time period she also claimed to be disable. T. 80-81. Having determined that Plaintiff was less than fully credible, the ALJ was not obligated to credit her subjective

complaints over the medical evidence of record, all of which supports the conclusion that her mental impairments are non-severe. *See Rivera v. Berryhill*, 2018 WL 375846, at *4 (W.D.N.Y. Jan. 11, 2018) (ALJ was not required to accept subjective complaints, unsupported by the medical evidence, where he properly found the claimant less than fully credible).

Plaintiff argues in the alternative that, even if the ALJ properly found that her mental impairments were non-severe, remand is still required because he did not incorporate any limitations based on these impairments into his RFC finding. This argument lacks merit. While it is true that an RFC finding must "account for limitations imposed by both severe and nonsevere impairments," *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012), in this case, there is no evidence that Plaintiff's non-severe mental impairments in fact resulted in any limitations. To the contrary, as discussed above, the medical evidence of record shows that, despite her mental impairments, Plaintiff was fully capable of functioning within normal limits. As such, the ALJ did not err by not including any limitations related to Plaintiff's mental impairments in his RFC determination.

**V. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted.

Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

    **ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    February 21, 2018
             Rochester, New York